UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>PEDRO VALENCIA-AYALA,<br><br>    Defendant. | Case No. 19-MJ-23473-MDD-JLS<br><br>**ORDER AFFIRMING JUDGMENT OF MAGISTRATE JUDGE**<br><br>(ECF No. 56) |

On October 22, 2020, Defendant Pedro Valencia-Ayala ("Defendant") filed a Notice of Appeal ("Not. Appeal," ECF No. 56) to the District Court, appealing the Final Judgment ("Final J.," ECF No 55) issued by Magistrate Judge Mitchell D. Dembin on October 21, 2020. The notice of appeal is timely, and this Court has jurisdiction pursuant to 18 U.S.C. § 3402. In support of the appeal, Defendant filed his Opening Brief ("Opening Br.," ECF No. 62). In response, the United States filed its Answer ("Answer," ECF No. 69), and Defendant responded with his Reply ("Reply," ECF No. 71). Having reviewed the Parties' briefing and the law, the Court **AFFIRMS** the judgment of the Magistrate Judge.

## BACKGROUND

On August 20, 2019, a U.S. Border Patrol Agent ("the Agent") responded to a citizen reporting Defendant's presence on her property. Answer at 1. The property is located approximately one mile north of the international boundary line between the United States and Mexico. *Id.* at 2. Upon questioning, Defendant stated that he was a citizen of Mexico;

1

was born in Mexico; did not have documents that allowed him to enter the United States lawfully; and was here illegally. *Id.* The Agent placed Defendant under arrest for violating 8 U.S.C. § 1325(a)(1). *Id.* After being advised of his *Miranda* rights, Defendant pled guilty for illegally attempting to enter the United States. *See id.*

During the bench trial, the Magistrate Judge found Defendant guilty of attempted illegal entry and sentenced Defendant to time served. *Id.* Judgment was entered on October 21, 2020, *see generally* Final J., and this appeal was timely filed on October 22, 2020, *see* Fed. R. Crim. P. 58(g)(2)(B) (establishing 14-day timeframe for appealing a magistrate judge's judgment of conviction or sentence); *see generally* Not. Appeal.

## ANALYSIS

Defendant challenges the constitutionality of § 1325. First, Defendant contends that § 1325 violates the non-delegation doctrine, and is void for vagueness. Opening Br. at 20–21. However, the Ninth Circuit has specifically repudiated each of these arguments. *See United States v. Melgar-Diaz*, 2 F.4th 1263 (9th Cir. 2021). Thus, the Court must dismiss these arguments.

In addition, Defendant asserts that § 1325 violates equal protection as implicitly guaranteed by the Fifth Amendment. Opening Br. at 3 (citing *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1686 n.1 (2017)). Specifically, Defendant alleges that § 1325, while facially neutral, was enacted by Congress with a discriminatory purpose and has a disparate impact on Mexican and other Latinx immigrants. *Id.* at 3 (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977)). To support his position, Defendant highlights hearings surrounding the passage of the Undesirable Aliens Act of 1929 to demonstrate racially discriminatory legislative intent. *See generally id.* at 5–11. Defendant further avers that "not only do courts examine the racial motivations of a law at the time of its passage, later reenactments do not cleanse the law of its original taint." *Id.* at 13 (citing *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020); *Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246 (2020)). Finally, Defendant notes that, even though Congress did not add attempt liability to § 1325(a)(1) until 1990, criminal attempt is "inextricably intertwined" with the

underlying offense, and thus the 1990 statutory amendment inherited the discriminatory legacy of its 1929 version. *Id.* at 3.

Recently, the Ninth Circuit rejected similar challenges to a highly analogous immigration law. In *United States v. Carrillo-Lopez*, the Ninth Circuit addressed whether 8 U.S.C. § 1326, which criminalizes illegal reentry into the United States by aliens, violates the equal protection guarantee of the Fifth Amendment. No. 21-10233, 2023 WL 3587596 (9th Cir. May 22, 2023). The Ninth Circuit declined to address which standard of review governed—the more deferential standard advocated by the Government, or the "usual" and more stringent standard for assessing Fifth Amendment equal protection claims established in *Village of Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. 252 (1977)—concluding that even under *Village of Arlington Height*'s heightened standard, Defendant's equal protection challenge failed. *Carrillo-Lopez*, 2023 WL 3587596, at *5.

*Village of Arlington Heights* held that a facially neutral law may nevertheless violate Fifth Amendment equal protection, but only if a discriminatory purpose was a motivating factor for the legislation. 429 U.S. at 265–66. As the Ninth Circuit explained:

> Whenever a challenger claims that a . . . law was enacted with discriminatory intent, the burden of proof lies with the challenger. To establish that the lawmakers had a discriminatory purpose in enacting specific legislation, it is not enough to show that the lawmakers had an awareness of the consequences of the legislation for the affected group, that those consequences were foreseeable, or that the legislature acted with indifference to the effect on that group. Rather, the lawmaking body must have selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group. Therefore, the plaintiff must prove by an evidentiary preponderance that racial discrimination was a substantial or motivating factor in enacting the challenged provision.

*Carrillo-Lopez*, 2023 WL 3587596, at *3 (internal citations and quotations omitted). As it was undisputed that § 1326 was facially neutral, the burden lay with the defendant in

*Carrillo-Lopez* to show that its enactment was motived by discrimination against Mexicans and other Central and South Americans. *See id.* at *6–14.

Section 1326, like § 1325, originated in 1952 with the passage of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq. Id.* at *6–9; *see also* Pub L. No. 82-414, §§ 275–76, 66 Stat. 163, 229 (1952). After analyzing the legislative history of the INA, the Ninth Circuit found a complete "lack of historical evidence that the Congress that enacted § 1326 in 1952 was motivated in part by a desire to discriminate against Mexicans or other Central and South Americans." *Carrillo-Lopez*, 2023 WL 3587596, at *11.

The Ninth Circuit then turned to the defendant's argument that prior immigration law—specifically the Act of March 4, 1929, Pub. L. No. 70-1018, 45 Stat. 1551 (the "1929 Act"), which undisputedly was motivated in part by racial animus against Mexicans and other Central and South Americans—"tainted" the INA because (1) "some of the legislators were the same in 1952 as in 1929"; (2) the 1952 Congress did not expressly disavow the 1929 Act; and (3) the INA constituted a reenactment of the 1929 Act. *Carrillo-Lopez*, 2023 WL 3587596, at *12. The Ninth Circuit rejected each of these arguments.

First, the Congress that passed the INA had experienced more than 96 percent turnover of its personnel since the passage of the 1929 Act, and the stray comments of the remaining legislators were "not probative of the intent of the legislature as a whole." *Id.* at *12. Second, the Ninth Circuit noted that "the Supreme Court has rejected the argument that a new enactment can be deemed to be tainted by the discriminatory intent motivating a prior act unless legislators expressly disavow the prior act's racism." *Id.* Third, the Ninth Circuit concluded that "the INA was not a 'reenactment' of the 1929 Act, but rather a broad reformulation of the nation's immigration laws, which included a recommendation 'that the time ha[d] come to erase from our statute books any discrimination against a person desiring to immigrate to this country or to become a naturalized citizen, if such discrimination [was] based solely on race.'" *Id.* (quoting S. Rep. No. 81-1515, at 710 (1950)); *see also United States v. Rios-Montano*, No. 19-CR-2123, 2020 WL 7226441, at *5 (S.D. Cal. Dec. 8, 2020) (noting that the legislative history of 1990 revealed "a 180-

4

degree turn away from the racist tropes that accompanied the enactment of the 1929 immigration law").

Finally, the Ninth Circuit rejected the defendant's argument that § 1326's disproportionate impact on Mexicans and other Central and South Americans was evidence that Congress was motivated by a discriminatory intent in enacting the statute. The Ninth Circuit concluded that the defendant had not produced any direct evidence of disparate impact, but even if he had, plain geography "undermines any inference of discriminatory motive." *Carrillo-Lopez*, 2023 WL 3587596, at *14. Noting that the U.S-Mexico border spans some 1,900 miles and is crossed every day by thousands of people, the Ninth Circuit found that "the fact that § 1326, which criminalizes reentry, has a greater impact on the individuals who share a border with the United States, and make up a large share of the unauthorized alien population, than those who do not, does not prove that penalizing such individuals was a purpose of this legislation." *Id.* (internal quotations and citations omitted).

The Ninth Circuit's reasoning in *Carrillo-Lopez* applies with equal force to Defendant's instant challenge to § 1325(a)(1). As the Government notes, it was not until the Immigration Act of 1990 that attempted entry was added to the list of prohibitions contained in § 1325. Answer at 3–4. As it is undisputed that the section is facially neutral, Defendant must show evidence of discriminatory purpose in the enactment of the Immigration Act of 1990 to successfully challenge § 1325(a)(1). *See Carrillo-Lopez*, 2023 WL 3587596, at *3; *Abbott v. Perez*, 138 S. Ct. 2305, 2325 (2018) ("[I]t was the plaintiffs' burden to overcome the presumption of legislative good faith and show that the [enacting legislature] acted with invidious intent."). Rather than make any attempt to meet said burden, Defendant instead focuses on the discriminatory motives behind the 1929 Act, which purportedly tainted later immigration law. *See* Opening Br. at 5–11. Defendant's sights are fixed on the wrong target. "'[P]ast discrimination cannot, in the manner of original sin, condemn [subsequent] governmental action that is not itself unlawful.'" *Carrillo-Lopez*, 2023 WL 3587596, at *4 (quoting *Abbott*, 138 S. Ct. at 2324). In the

absence of any evidence that the Immigration Act of 1990 was motivated by discriminatory purpose, Defendant's Fifth Amendment equal protection challenge fails. Likewise, to the extent Defendant argues that the INA suffers from discriminatory motive, that argument is foreclosed by *Carrillo-Lopez*. *See supra* pp. 4–5.

Lastly, Defendant contends that § 1325 disparately impacts "Mexican and other Latinx defendants," which supports a finding of discriminatory motive. Opening Br. at 13. Defendant notes that "[i]n 2000, over 97% of persons apprehended at the border were Mexican. In 2005, Mexicans made up 86% of apprehensions, and in 2010, 87%." *Id.* (footnote omitted). Even if the Court were to assume that immigration data from the 2000s had some probative value as to the motivations of a Congress formed a decade earlier, such statistics are undermined by the same geographic realities addressed in *Carrillo-Lopez*. *Supra* p. 5. Indeed, "'because Latinos make up a large share of the unauthorized alien population,' 'virtually any generally applicable immigration policy could be challenged on equal protection grounds' if disproportionate impact were sufficient to state a claim." *Carrillo-Lopez*, 2023 WL 3587596, at *14 (quoting *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1915, 1916 (2020)). The Ninth Circuit held that "the claim that a law has a disparate impact . . . on Latinos from Mexico is not sufficient to state a plausible equal protection claim." *Id.* (internal quotations and citations omitted). Therefore, Defendant's allegation that "the overwhelming number of Border Patrol arrests along the southern border are of Mexicans or people of Latinx origin," Opening Br. at 13, fails to state a plausible Fifth Amendment equal protection claim.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## CONCLUSION

For the above reasons, the Court finds that 8 U.S.C. § 1325(a)(1) is not unconstitutionally vague and does not violate the non-delegation doctrine nor the Fifth Amendment equal protection clause. Accordingly, the Court **AFFIRMS** the judgment of the Magistrate Judge.

**IT IS SO ORDERED.**

Dated: June 13, 2023

Hon. Janis L. Sammartino
United States District Judge